UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

JORGE M. GUZMAN,
          Appellant,

      v.

DEPARTMENT OF HOMELAND
  SECURITY,
         Agency.

DOCKET NUMBER
SF-0752-15-0170-A-2

DATE: January 6, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>James P. Walsh</u>, Esquire, Long Beach, California, for the appellant.

<u>Carolyn D. Jones</u>, Esquire, Williston, Vermont, for the agency.

<u>John B. Barkley</u>, Esquire, Phoenix, Arizona, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review and the appellant has filed a cross petition for review of the addendum initial decision, which awarded $198,162 in attorney fees and $6,584.02 in costs. Generally, we grant petitions such as these

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review. We MODIFY the addendum initial decision to deduct 5 hours from the fee award due to a mathematical error, and we reduce the amount of costs awarded to $3,597.90. Except as expressly MODIFIED herein, we AFFIRM the addendum initial decision.

## BACKGROUND

¶2     The following facts, as recited in the addendum initial decision, are generally undisputed. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-A-2, Attorney Fees File (A-2 AFF), Tab 15, Addendum Initial Decision (AID). Following investigations in 2004 to 2005 and 2010 to 2014 (related to the appellant's educational qualifications and to the discovery of a microphone in his old office), the agency removed the appellant from his Assistant Special Agent in Charge position for lack of candor (involving the microphone discovery). AID at 2. The appellant retired in lieu of removal. *Id.* After the appellant filed a Board appeal and the administrative judge held a 6-day hearing, the administrative judge reversed the appellant's removal and granted corrective action based on a determination that the agency retaliated

against him for whistleblowing disclosures. AID at 1-2; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-I-2, Initial Decision (Sept. 29, 2017). The merits initial decision became the Board's final decision when neither party filed a petition for review. AID at 2.

¶3    The appellant filed a motion for attorney fees, which was dismissed without prejudice and automatically refiled. AID at 1, 3-4; A-2 AFF, Tab 1; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-A-1, Attorney Fees File (AFF), Tabs 1, 20. The administrative judge issued an addendum initial decision, which granted in part the appellant's motion for attorney fees and costs. AID at 1-2. The administrative judge made the following findings: (1) the appellant was a prevailing party in the merits initial decision and generally entitled to reasonable attorney fees and costs pursuant to 5 U.S.C. § 1221(g);[2] (2) the appellant proved his entitlement to 13.3 hours for Michael Zweiback, 33.1 hours for Margarita Gevondyan, and 426 hours for James P. Walsh; (3) $540/hour is an appropriate rate for Mr. Zweiback, $300/hour for Ms. Gevondyan, and $425/hour for Mr. Walsh; (4) the appellant is entitled to a fee award in the amount of $7,182 for Mr. Zweiback, $9,930 for Ms. Gevondyan, and $181,050 for Mr. Walsh; and (5) he is entitled to $6,584.02 in costs. AID at 3-20.

¶4    The agency has filed a petition for review, the appellant has filed a response, and the agency has filed a reply. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-A-2, Petition for Review (PFR)

---

[2] The administrative judge concluded that, because no final decision had yet been issued regarding the appellant's petition for enforcement and addendum proceedings for compensatory and consequential damages, his request for fees for those actions was premature. AID at 2-3 & n.2. The appellant does not object to this ruling. Petition for Review File, Tab 3 at 25. The administrative judge properly found such requests premature, and we do not further consider them here. *See, e.g.*, *Miller v. Department of the Army*, 106 M.S.P.R. 547, ¶ 8 (2007); *see also* 5 C.F.R. § 1201.203(d) ("A motion for attorney fees must be filed as soon as possible after a final decision of the Board but no later than 60 days after the date on which a decision becomes final.").

File, Tabs 1, 3, 5. The appellant has filed a cross petition for review, and the agency has filed a response. PFR File, Tabs 3, 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>Legal Standard</u>

¶5      The administrative judge evaluated the fee award pursuant to 5 U.S.C. § 1221(g). AID at 5. This paragraph states that corrective action "shall" include "reasonable" attorney fees and "any other reasonable costs incurred" "[i]f an employee . . . is the prevailing party before the Merit Systems Protection Board, and the decision is based on a finding of a prohibited personnel practice." 5 U.S.C. § 1221(g)(1)-(2). Section 1221(i) of Title 5 of the U.S. Code makes section 1221(g)(2) applicable to the appellant's removal appeal under 5 U.S.C. § 7513(d), and we discern no error with the administrative judge's use of this standard in this matter.[3] *See* 5 U.S.C. § 1221(i).

¶6      The computation of a reasonable attorney fees award begins with an analysis of two objective variables: the lawyer's customary billing rate and the number of hours reasonably devoted to the case. *Ruble v. Office of Personnel Management*, 96 M.S.P.R. 44, ¶ 7 (2004). The burden of establishing the reasonableness of hours claimed in an attorney fees application is on the moving party. *Id.*

¶7      The administrative judge noted that, in *Rumsey v. Department of Justice*, 866 F.3d 1375, 1379 (Fed. Cir. 2017), the United States Court of Appeals for the Federal Circuit held that "the mandatory language of [5 U.S.C. § 1221(g)] makes clear that a petitioner who is a prevailing party is entitled to attorney's fees and costs, even if the supporting documentation is in some way deficient." AID at 5.

---

[3] The administrative judge found that, because an award of attorney fees was mandatory based on the corrective action award, she did not need to address whether an award of fees would be in the interest of justice under 5 U.S.C. § 7701(g). AID at 6 n.4. Neither party specifically argues that the administrative judge used the incorrect legal standard for evaluating the fee petition.

Further, she noted that the court advised that when the documentation is deficient, the Board has "an obligation" to critically review the records and identify hours that are "excessive, redundant, or otherwise unnecessary." AID at 5-6 (discussing *Rumsey*, 866 F.3d at 1381).

<u>We affirm the administrative judge's analysis and conclusions regarding hourly rates.</u>

¶8        Neither party challenges on review the administrative judge's decision to award a $540/hour rate to Mr. Zweiback or a $300/hour rate to Ms. Gevondyan. AID at 13-14. We find that the administrative judge's analysis is reasonable, and we affirm her decision in this regard. We now turn to Mr. Walsh's $425/hour rate awarded by the administrative judge.

¶9        In the addendum initial decision, the administrative judge considered the appellant's contention that Mr. Walsh was entitled to a $500/hour rate and the agency's argument that he was only entitled to a $325/hour rate. AID at 17-18. In addressing the appellant's argument, the administrative judge noted that the Federal Circuit has declined to endorse the "*Laffey* matrix"[4] to evaluate a reasonable rate, but it held that it may consider the matrix as part of the determination of a reasonable rate. AID at 18 (citing *Biery v. United States*, 818 F.3d 704, 713-14 (Fed. Cir. 2016)). The administrative judge noted, among other things, that the Central District of California[5] uses different reports than the *Laffey* matrix, and she discussed hourly rates for partners and associates in California. *Id.* The administrative judge acknowledged that Mr. Walsh had "extensive, complex trial experience, which was beneficially exhibited" in the

---

[4] The *Laffey* Matrix is a schedule of hourly rates allowed by the U.S. District Court for the District of Columbia in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *reversed in relevant part*, 746 F.2d 4 (D.C. Cir. 1984), *overruled by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988). *Caros v. Department of Homeland Security*, 122 M.S.P.R. 231, ¶ 9 n.5 (2015). It purports to show the prevailing market rates for attorneys in the District of Columbia. *Id.*

[5] The relevant geographic market for determining a reasonable hourly rate is the forum of the litigation. *Casali v. Department of the Treasury*, 81 M.S.P.R. 347, ¶ 9 (1999).

merits appeal, this appeal was his first matter before the Board, and he did not identify any prior experience handling Federal employment law matters. AID at 17-18.

¶10     The agency argues on review that an hourly rate of $425 is excessive because, although Mr. Walsh had extensive criminal and civil experience, he had no prior Board or employment law experience. PFR File, Tab 1 at 19-21. The agency cites to two initial decisions to support its requested hourly rate, which are not precedential. *Id.*; *see Rockwell v. Department of Commerce*, 39 M.S.P.R. 217, 222 (1988); 5 C.F.R. § 1201.113. Conversely, the appellant contends that the administrative judge should have awarded him an hourly rate of $500, relying on, among other things, his hourly rate before he retired in 2005 ($450-500/hour), a declaration from another attorney who has extensive experience in Federal employment law ($560/hour), and the rate under the *Laffey* matrix for someone with 31 years of experience ($602-613/hour). PFR File, Tab 3 at 20-22.

¶11     We have considered these arguments. The administrative judge's analysis was reasonable and thoughtful, and the parties have not persuaded us that her analysis or conclusion was in error. Therefore, we affirm her decision to award Mr. Walsh a rate of $425/hour.[6]

---

[6] For the first time on review, the agency asks that any hours charged by Mr. Walsh for clerical duties should be charged at a rate of no more than $100/hour. PFR File, Tab 1 at 20-21. The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016); 5 C.F.R. § 1201.115(d). The agency has not made such a showing, and we do not address this argument on review.

<u>With the exception of correcting a mathematical error, we affirm the administrative judge's evaluation of the hours of work performed by Mr. Zweiback, Ms. Gevondyan, and Mr. Walsh.</u>[7]

¶12    The addendum initial decision contains the administrative judge's lengthy and detailed analysis of the hours claimed for work performed by Mr. Zweiback, Ms. Gevondyan, and Mr. Walsh on the appellant's behalf.  AID at 7-17.  There was a considerable amount of attorney work performed before the notice of proposed removal (involving the microphone discovery); thus, the administrative judge explained that fees could be awarded for time spent on a separate and optional, but factually related, proceeding if (1) the claimed portion of work done in that proceeding was reasonable under *Kling v. Department of Justice*, 2 M.S.P.R. 464 (1980),[8] and (2) the work, or some discrete portion of it, done in the other proceeding, significantly contributed to the success of the subsequent Board proceeding and eliminated the need for work that otherwise would have been required in connection with that subsequent proceeding.   AID at 6-7 (discussing *Richards v. Department of Justice*, 67 M.S.P.R. 46, 50 (1995)).

¶13    The administrative judge concluded that some of the time Mr. Zweiback billed at Nixon Peabody, LLP, related to work involving the agency investigation

---

[7] In *Wilson v. Department of Health & Human Services*, 834 F.2d 1011, 1012 (Fed. Cir. 1987), the Federal Circuit held that, if an administrative judge has concerns about deficiencies in a motion for attorney fees, she should afford the appellant an opportunity to address the matter before rejecting the claims.  Here, the administrative judge disallowed certain claimed hours without first communicating her doubts to the appellant and providing him an opportunity to answer.  However, an adjudicatory error that is not prejudicial to the appellant's substantive rights provides no basis for reversal of the addendum initial decision.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).  The agency noted objections to the fee petition and supplemental filings, *e.g.*, AFF, Tab 15; A-2 AFF, Tab 10, and the appellant discusses these claims on review, PFR File, Tab 3.  Accordingly, we are able to decide the reasonableness of the disputed fees without remanding the matter to the administrative judge.  *See Driscoll v. U.S. Postal Service*, 116 M.S.P.R. 662, ¶ 12 (2011); *Diehl v. U.S. Postal Service*, 88 M.S.P.R. 104, ¶ 9 (2001).

[8] *Kling* discussed the lawyer's customary hourly billing rate and the number of hours devoted to the case.  *Kling*, 2 M.S.P.R. at 472.

into the appellant's educational qualifications and the appellant's response to that investigation was recoverable because it was "directly relevant to persuading the agency to resolve the [earlier] proposed removal related to alleged lack of candor about the appellant's education background." AID at 7-8. However, Mr. Zweiback's Seyfarth Shaw, LLP, billing records from 2010 largely related to criminal matters and interactions with the U.S. Attorney's Office and were not recoverable. AID at 8. Similarly, she found that Mr. Zweiback's Arent Fox billing records related to litigation at the Equal Employment Opportunity Commission and the Office of Special Counsel (OSC) were not recoverable, in part because the appellant did not timely appeal from OSC's close-out letter.[9] *Id.* The administrative judge also discussed in detail numerous other Nixon Peabody billing records for Mr. Zweiback and Ms. Gevondyan and approved, rejected, or reduced the claimed hours.[10] AID at 9-13.

¶14　　Regarding Mr. Walsh, the administrative judge rejected as too disconnected from the issues in this appeal 40 hours of preliminary research in July 2012, 50 hours drafting an OSC complaint and corresponding with OSC, 35 hours working to obtain information through a Freedom of Information Act (FOIA) request, 40 hours corresponding with high-ranking agency officials, and additional time spent researching and drafting a complaint under the Federal Tort Claims Act (FTCA).[11] AID at 14-15. However, she awarded 100 hours for

---

[9] The appellant concedes that Mr. Zweiback's work at Arent Fox in the equal employment opportunity matter "is not sufficiently related to the action under consideration by the Board to warrant an award of attorney fees." PFR File, Tab 3 at 9. We affirm the administrative judge's decision not to award fees for this work.

[10] The administrative judge explained that, due to Mr. Zweiback's use of block billing, it was impossible to determine how much of certain entries was recoverable (because it related to the educational qualifications issue) and how much was not recoverable (because it was related to the criminal matter). AID at 9 & n.6.

[11] The appellant does not appear to challenge the administrative judge's decision to disallow 50 hours for time spent "dealing with the OSC" or 20 hours claimed in connection with the filing of a complaint under the FTCA. PFR File, Tab 3 at 15, 17. We affirm her decisions in this regard.

reviewing the report of investigation related to the lack of candor charge (involving the appellant's educational qualifications) and responding to that earlier notice of proposed removal, 150 hours for preparing the response to the notice of proposed removal regarding the lack of candor charge (involving the microphone discovery), 10 hours spent in the mediation process,[12] and 19 hours for preparing the fee petition. AID at 15-17. The administrative judge acknowledged that Mr. Walsh estimated spending 38 hours drafting pleadings and 53 hours reviewing pleadings and discovery responses for a total of 91 hours prior to mediation; however, because she already approved a significant amount of time for Mr. Walsh to review the agency file materials during the predecisional period and much of the discovery related to the equal employment opportunity process, the administrative judge only approved 60 hours for this work. AID at 16. Similarly, after mediation, Mr. Walsh estimated spending at least 92 hours drafting motions, conducting the hearing, and preparing the written closing argument, but because the motions for a protective order were denied, the administrative judge only approved 87 hours for this work. AID at 17. In total, the administrative judge awarded 13.3 hours for Mr. Zweiback, 33.1 hours for Ms. Gevondyan, and 426 hours for Mr. Walsh. AID at 12-13, 17.

¶15 Both parties challenge the administrative judge's assessment of claimed hours. PFR File, Tab 1 at 10-19, Tab 3 at 9-18. It is well settled that the administrative judge who adjudicated the case on the merits is in the best position to determine whether the number of hours expended is reasonable and absent a specific showing that the administrative judge's evaluation was incorrect, the Board will not second-guess it. *Wightman v. Department of Veterans Affairs*, 111 M.S.P.R. 109, ¶ 11 (2009); *Ruble*, 96 M.S.P.R. 44, ¶ 13; *Holliman v. U.S. Postal Service*, 81 M.S.P.R. 637, ¶ 4 (1999); *Beall v. Department of the Interior*, 68 M.S.P.R. 231, 234 (1995). The arguments in the petition for review and cross

---

[12] Neither party challenges the administrative judge's award of hours related to mediation, and we affirm this decision.

petition for review largely constitute mere disagreement with the administrative judge's detailed determinations. Nevertheless, we will address some of the parties' arguments herein.

¶16    For example, the agency argues that the administrative judge erred in awarding attorney fees to Mr. Zweiback, Ms. Gevondyan, and Mr. Walsh for work performed in unrelated matters, particularly the appellant's educational qualifications matter. PFR File, Tab 1 at 10-13. The agency asserts that the educational qualifications case has never been before the Board and the appellant did not show that work done by his attorneys in that matter significantly contributed to his success in his merits appeal. *Id.* at 10. The agency also argues that the administrative judge's reliance on *Richards* was misplaced because *Richards* involved an award of fees for work prior to the issuance of the proposal at issue, and not for work on a different proposal that never made its way to the Board and was unrelated to the Board appeal. *Id.* at 11. Alternatively, the agency contends that any fees awarded should be "substantially reduced because the work performed [was] not detailed and its context not provided." *Id.* at 12.

¶17    We discern no error with the administrative judge's analysis or reliance on *Richards*. Although *Richards* may have involved fees for work performed related to the removal at issue, the holding in *Richards* does not preclude the administrative judge from taking a holistic view of the appellant's whistleblower retaliation claim in her decision to award fees. Indeed, the administrative judge concluded in the merits initial decision that the educational qualifications case was tied to the appellant's allegations of reprisal for whistleblowing disclosures. *See Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-I-2, Initial Decision at 34 (Sept. 29, 2017) (finding that the appellant proved by preponderant evidence that "his 2010 disclosure prompted the agency to initiate the [educational] credentials investigation . . . which led to the agency re-opening the investigation into the 2004 microphone discovery, the culmination of which was his removal"). Because of the administrative judge's explicit

findings linking the whistleblower reprisal claim to the educational qualifications case, we discern no error in the administrative judge's decision to award fees in this regard.

¶18   The agency argues that the administrative judge erred in awarding Mr. Walsh 150 hours for the March 7, 2014 notice of proposed removal (involving the microphone discovery) because he "lacks any records of the time worked" and he only "offers generalities for much of the work performed." PFR File, Tab 1 at 13-15. The agency does not dispute that some fees should be awarded; it argues instead, as it did before the administrative judge, that only 49 hours should be awarded for this work. *Id.* at 13; A-2 AFF, Tab 10 at 15-17.

¶19   Mr. Walsh admitted before the administrative judge that it was his intention to work pro bono for the appellant; thus, he did not maintain time-keeping records until a July 18, 2018 status conference in which he was directed to file an accounting of his work. A-2 AFF, Tab 3 at 5. Therefore, he had to reconstruct time-keeping records from his 6 years of representation through notes, correspondence, emails, and pleadings. *Id.* As the agency noted, however, the absence of contemporaneous records is normally an insufficient basis, by itself, to completely deny an attorney fee request, but it may prompt the Board to carefully scrutinize the reconstructed records and reduce the hours claimed if there is uncertainty as to their accuracy. A-2 AFF, Tab 10 at 11 (citing *Wilson v. Department of Health & Human Services*, 22 M.S.P.R. 435, 437 (1984)). The addendum initial decision reflects the administrative judge's proper consideration of Mr. Walsh's reconstructed records and explanation of claimed hours both regarding the notice of proposed removal (involving the microphone discovery) and other filings.

¶20   The record supports the administrative judge's decision to approve 150 hours for Mr. Walsh's work on the notice of proposed removal (involving the microphone discovery). Importantly, Mr. Walsh provided a narrative explanation made under penalty of perjury for the work that he performed during this time

frame. A-2 AFF, Tab 5 at 3, 32-34. Notably, the March 7, 2014 notice of proposed removal included a lengthy, 450-page Report of Investigation, the appellant submitted written replies on June 26 and July 22, 2014, and the appellant made an oral reply on July 31, 2014; after the agency notified the appellant that the deciding official would rely on additional materials, the appellant submitted additional written replies on September 23 and 29, 2014, and he provided an October 21, 2014 oral reply. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-I-1, Initial Appeal File, Tab 6 at 32-101, 103-12, 114-15, 120-22, 124-239, Tab 7 at 4-29, 51-55, 57-203, Tab 8 at 4-99, Tab 9 at 4-222, Tab 10 at 268-72, 275-77, Tab 11 at 4-321, Tab 12 at 4-150. Given the volume of documentation relating to the lack of candor charge (involving the microphone discovery), as well as the amount of substantive correspondence between the parties before a decision was made on the proposed removal, we do not find such hours excessive, and we discern no error with the administrative judge's award of 150 hours of work.

¶21     The agency also argues that the 91 hours sought by Mr. Walsh related to work performed after the appeal was filed and prior to the referral to mediation is excessive. PFR File, Tab 1 at 15-18. These arguments were largely raised before the administrative judge. *Compare id.* at 15-17, *with* A-2 AFF, Tab 10 at 17-19. However, the agency correctly notes on review that there is a mathematical error. Although Mr. Walsh claimed 53 hours for reviewing pleadings and discovery responses, the total amount was actually 48 hours. PFR File, Tab 1 at 15-16 & n.2; *see* A-2 AFF, Tab 5 at 37 (explaining that he spent 8 hours, 15 hours, and 25 hours, respectively, reviewing agency documents). Therefore, instead of 91 claimed hours for Mr. Walsh's work in the appeal prior to mediation, the correct amount is 86 hours of work. Because we discern no error with the administrative judge's decision to reduce the claimed hours by 31 hours, it is appropriate to subtract that amount from the new starting point of 86 hours for this work. Accordingly, we modify the addendum initial decision to award

Mr. Walsh 55 hours for his work reviewing agency pleadings and discovery responses in MSPB Docket No. SF-0752-15-0170-I-1.

¶22     Regarding the refiled appeal, the agency asserts that Mr. Walsh failed to adequately support his claim of 92 hours to include drafting motions for a protective order (5 hours) and a prehearing submission (7 hours), conducting the hearing (60 hours), and preparing the written closing argument (20 hours).  PFR File, Tab 1 at 17-18.  Instead, the agency requests that the appellant recover only 80 hours for this work.  *Id.* at 18; A-2 AFF, Tab 10 at 20.  The agency's argument is not persuasive, and we affirm the administrative judge's decision to award 87 hours for Mr. Walsh's work in the refiled appeal.

¶23     The agency contends that the administrative judge erred by granting the full amount of 19 hours requested for Mr. Walsh's work on the fee petition as both premature and lacking support.  PFR File, Tab 1 at 18-19.  In the addendum initial decision, the administrative judge addressed this argument, noting that the Board has approved fees for time spent preparing a fee petition without requiring a separate addendum petition to evaluate fees.  AID at 17 (citing *Guy v. Department of the Army*, 118 M.S.P.R.   45, ¶ 23 (2012), and *Driscoll v. U.S. Postal Service*, 116 M.S.P.R. 662, ¶ 30 (2011)).  She also noted that the agency did not challenge the request for 19 hours.  *Id.*  We discern no error with the administrative judge's assessment that 19 hours was a reasonable amount of time for the work on the appellant's fee petition, particularly given his success at the merits stage and the fact that multiple attorneys had represented him at various stages in his litigation against the agency.  *See, e.g.*, *Driscoll*, 116 M.S.P.R. 662, ¶ 30 (awarding 15.45 hours for the fee petition).

¶24     The appellant also challenges some of the administrative judge's findings in the addendum initial decision.  For example, he argues that he was entitled to all fees claimed by Mr. Zweiback for his work at Seyfarth Shaw in connection with the criminal matter because it was "not a bona fide criminal investigation," but instead, agency investigators "[made] use of [F]ederal criminal tools and

processes to accomplish their goal" of removing the appellant. PFR File, Tab 3 at 9-11. He argues that, although labeled as "criminal" work, Mr. Zweiback's contacts with the U.S. Attorney's Office were an "early part of the effort to frustrate" the agency's retaliation against the appellant for his whistleblowing disclosures. *Id.* at 11. The appellant has not persuaded us that the administrative judge's assessment of this work was in error.

¶25 The appellant also contends that the administrative judge erred by significantly reducing hours claimed by Mr. Zweiback and Ms. Gevondyan at Nixon Peabody. *Id.* at 11-14. Although he criticizes the administrative judge's decision to "disallow[] a very substantial amount of fees," he concedes that he would essentially be comparing his "estimate of the fairness of a particular assignment of allowable hours" with the administrative judge's estimate. *Id.* at 11-13. We discern no specific error in the administrative judge's determination in this regard.

¶26 Finally, the appellant asserts that the administrative judge erred by disallowing some of Mr. Walsh's claimed hours, such as 40 hours "familiariz[ing] himself with the background and details of the [a]gency investigation," 35 hours to obtain information from the agency through a FOIA request,[13] and 40 hours corresponding with agency managers. *Id.* at 14-17. The appellant's submissions do not persuade us that it is appropriate to second-guess the administrative judge's decisions in this regard.

¶27 We have considered the parties' remaining arguments, but none warrant a different outcome. For these reasons, we affirm the administrative judge's decision to award 13.3 hours for Mr. Zweiback ($7,182), and 33.1 hours for Ms. Gevondyan ($9,930). We modify the addendum initial decision to award 421 hours for Mr. Walsh ($178,925). Thus, the total fees awarded are $196,037.

---

[13] He proposes instead that 12 hours should be awarded. PFR File, Tab 3 at 16.

<u>We modify the addendum initial decision to reduce the award of costs to $3,597.90.</u>

¶28      The administrative judge noted that 5 U.S.C. § 1221(g) permits recovery of costs and the Board has interpreted this provision to permit a broader recovery than may apply in appeals under 5 U.S.C. § 7701. AID at 19 (citing *Smit v. Department of the Treasury*, 61 M.S.P.R. 612 (1994), and *Department of Health & Human Services v. Balaban*, 33 M.S.P.R. 309 (1987)). The administrative judge awarded the appellant costs for 50 round trips of 80 miles each for Mr. Walsh to drive to his house, based on the Internal Revenue Service mileage rate ($0.535 per mile), for a total of $2,140. *Id.* Noting that the agency "did not file anything" after Mr. Walsh submitted receipts for mailing and related expenses, the administrative judge also awarded the appellant $4,444.02 for such expenses. *Id.* However, she did not award costs for Mr. Walsh's annual state bar dues and continuing legal education requirements because they were "routine item[s] of attorney overhead."[14] AID at 19-20. The total award of costs awarded by the administrative judge was $6,584.02. AID at 20.

¶29      On review, the agency argues that the administrative judge erred in awarding costs when the appellant failed to provide an itemized accounting of services and expenses claimed as costs, untimely filed his evidence of costs, and was awarded costs for nonreimbursable items. PFR File, Tab 1 at 21-26. For the following reasons, we find that the appellant is entitled to an award of costs, but the amount of costs awarded by the administrative judge should be reduced.

---

[14] The appellant challenges the administrative judge's decision not to award costs for activating Mr. Walsh's bar membership and accompanying continuing legal education because he was "fully retired," and it was the "shared understanding" between him and Mr. Walsh that he would be compensated for these expenses. PFR File, Tab 3 at 19. However, the appellant offers no legal authority to support this proposition that routine items of attorney overhead, such as bar dues, are recoverable. Accordingly, we affirm the administrative judge's conclusion in this regard.

*Travel Expenses*

¶30     As support for his request for reimbursement for travel, Mr. Walsh stated under penalty of perjury that, "during the course of [6+] years of representing" the appellant, from approximately July 2012 to 2018, "[he] made a great many trips to [the appellant's] house in connection with document filing, because [the appellant] is much more computer-literate than [he was], and [he] relied upon his expertise to help [him] format and submit documents to the Board." A-2 AFF, Tab 5 at 43. Mr. Walsh also stated that it was "much easier to have [the appellant] answer specific questions about documentary assertions if [they were] together as [he worked]." *Id.* Mr. Walsh stated that the distance between his home and the appellant's home was 40 miles and the roundtrip was 80 miles. *Id.* He estimated that he made "not fewer than a total of 50 trips." *Id.* Mr. Walsh asked for reimbursement of "that amount of mileage . . . at the prevailing per diem mileage rate paid for government travel," which he calculated to be "$2140.00 at .53.5 a mile based on the Internal Revenue Service standard mileage rate for reimbursement." *Id.*

¶31     The agency asserts that, because Mr. Walsh failed to provide the dates of these trips and the specific reason for each trip, the administrative judge erred in awarding him costs for these expenses. PFR File, Tab 1 at 22. The administrative judge acknowledged that the dates offered by Mr. Walsh were not clear, but she noted that the court in *Rumsey* held that, although specific date records were the "preferred practice," an estimate was also acceptable. AID at 19 (citing *Rumsey*, 866 F.3d at 1379). We discern no error with the administrative judge's analysis in this regard.

¶32     However, even if we credit Mr. Walsh's statements made under penalty of perjury regarding the distance between his house and the appellant's house as well as his estimate that he made "not fewer than a total of 50 trips" during this time frame, he is not entitled to recover all such claimed expenses. The merits

appeal concluded in 2017, the appellant filed a December 2017 petition for enforcement, and the damages appeals commenced in January 2018, all of which were granted (at least in part) and are currently pending on review. Mr. Walsh's statements did not indicate whether the purpose of any of the 50 claimed trips was to discuss the petition for enforcement or the addendum damages proceedings, which for the above reasons are not included in a fee award at this time.

¶33     A closer review of the appellant's submissions provides some clarity on this point. In a supplemental declaration made under penalty of perjury, Mr. Walsh indicated that he compiled an accounting of "attorney time spent on this appeal" since July 18, 2018, which included desk calendar entries. A-2 AFF, Tab 11 at 88. A review of Mr. Walsh's desk calendar, which covers July 16 through December 16, 2018, reflects that on various dates, including July 31, August 21, September 6, October 22, October 24, October 28, and December 3, his trips to the appellant's house involved meetings to discuss issues relating to the compliance matter or the addendum damages proceedings. *Id.* at 91-109. Accordingly, because there has been no final decision in these matters, these trips are not reimbursable at this time, and we subtract these seven trips from the total number of trips claimed by Mr. Walsh.

¶34     Also, given Mr. Walsh's concession that he "made a great many trips to [the appellant's house] in connection with document filing" and "relied upon [the appellant's] expertise to help [him] format and submit documents to the Board," A-2 AFF, Tab 5 at 43, Mr. Walsh likely visited the appellant on various dates in late 2017 and early 2018 to discuss and file certain pleadings in the enforcement action and addendum damages appeals. For example, Mr. Walsh likely visited the appellant on or before December 13, 2017, to discuss and file the petition for enforcement, on or before January 2, 2018, to discuss and file the motion for damages, on or before January 18, 2018, to discuss and file the first supplement to the motion for damages, on or before January 30, 2018, to discuss and file the reply to the agency's response to the petition for enforcement, and on or before

April 6, 2018, to discuss and file the second supplement to the motion for damages. Therefore, we subtract an additional five trips from the total number of trips claimed by Mr. Walsh.

¶35    Accordingly, if we multiply 38 trips to the appellant's house by 80 miles round trip by the claimed rate of $0.535 per mile,[15] the total is $1,626.40 in travel expenses awarded. We modify the addendum initial decision in this regard.

*Receipts*

¶36    As support for his request for reimbursement for costs, Mr. Walsh stated under penalty of perjury that he gathered receipts during his representation of the appellant. A-2 AFF, Tab 11 at 16. He explained that it was his "regular practice to obtain paper receipts for items purchased to advance his case, including office supplies [and] costs of copying documents" that were sent by the Board or opposing counsel, "which [he] was unable to download at home." *Id.* He stated that he "placed those receipts into a file folder which was dedicated to those receipts." *Id.* Copies of these receipts "in an undifferentiated accumulation" are in the record. *Id.* at 17-86. Mr. Walsh acknowledged that "[p]lacing those receipts into date order, or attempting to now recall what purpose was served by each expenditure is, as a practical matter, impossible." *Id.* at 17. He indicated that the receipts totaled $4,444.02. *Id.*

¶37    The agency objects to an award of any costs because the appellant failed to describe each expense in detail and did not show how each claimed expense related to the current litigation.[16] PFR File, Tab 1 at 26. The agency also objects

---

[15] The agency does not argue on review that the claimed mileage rate of $0.535 is unreasonable. We discern no error with the administrative judge's reliance on the appellant's claimed mileage rate for the allowed trips. *Roman v. Department of the Army*, 72 M.S.P.R. 409, 419 n.2 (1996), *aff'd*, 129 F.3d 134 (Fed. Cir. 1997).

[16] In responding to the administrative judge's statement in the addendum initial decision that the agency "did not file anything" after Mr. Walsh submitted the receipts for mailing and related expenses, AID at 19, the agency argues on review that it could not dispute the "late-filed receipts" because the record on attorney fees was closed, PFR

to all pre-2014 receipts (because the appellant failed to show how these expenses related to his successful litigation) and to all illegible receipts. *Id.* The agency asserts that certain expenses are not recoverable, including copying expenses, printer ink, paper, and all office supplies. *Id.* Finally, the agency objects to the administrative judge's decision to award costs for a new MacBook laptop and diagnostics, and for packages sent to the U.S. district court, the agency's FOIA Deputy Director, D.S., and an unknown recipient. *Id.*

¶38     We agree with the agency that some of these costs are not recoverable. Consistent with the administrative judge's decision not to award Mr. Walsh costs for his annual state bar dues and continuing legal education requirements because such expenses are a "routine item of attorney overhead," we also consider the following expenses as overhead and therefore nonreimbursable: ear buds ($8.71), Thomson Reuters – Federal Judicial Procedure and Rules, full set ($139.52), 2015 At-A-Glance calendar ($23.99), Really Useful 64L storage box ($32.69), MacBook plus extras ($2,114.37), and diagnostics ($79). A-2 AFF, Tab 11 at 33, 36, 45, 54, 73. The total amount of this additional nonreimbursable overhead is $2,398.28, which we deduct from the award of costs.

¶39     Additionally, there are other expenses that are not reimbursable because the appellant has not shown how the particular receipts are related to the merits appeal, including a March 15, 2013 package to U.S. district court ($3.31), an

---

File, Tab 1 at 22-23. Despite the administrative judge's order that the appellant submit an accounting for fees by October 12, 2018, and the agency should respond by October 19, 2018, A-2 AFF, Tab 2 at 1-2, the parties filed several submissions after these deadlines, *e.g.*, A-2 AFF, Tabs 4-5, 9-11. In the appellant's last submission, filed on December 14, 2018, he included, for the first time, nearly 70 pages of receipts. A-2 AFF, Tab 11. The administrative judge correctly noted that the agency did not file any pleading after the appellant submitted these receipts, and the agency did not seek leave to file a response to the appellant's December 14 submission. However, given the lateness of the appellant's submission of receipts and because the agency's petition for review includes numerous arguments against the admission of and reliance on these receipts, PFR File, Tab 1 at 22-26, we will consider these arguments in the first instance.

April 29, 2014 mailing to the agency's FOIA Deputy Director ($12.66),[17] and a May 2, 2015 filing with the U.S. district court ($12.50). A-2 AFF, Tab 11 at 35, 44, 57. There are also two expenses for "Fruit Slices" candy ($0.99 each for a total of $1.98).[18] *Id.* at 52, 58. Additionally, the receipt on page 77 for $0.86 appears to be a duplicate of the receipt on page 75; the duplicate receipt is not recoverable. Finally, Mr. Walsh submitted a credit card statement from June 25 through July 14, 2013. *Id.* at 68. However, the transactions on June 24, 2013, in the amounts of $9.18 and $33.75, were already reflected on the receipts on pages 33-34 and are not recoverable. Accordingly, we deduct an additional $74.24 from the award of costs.

¶40 We are not persuaded by the agency's remaining arguments. If we subtract the total amount of additional overhead and nonreimbursable expenses from the administrative judge's award of $4,444.02, the appellant is entitled to an award of $1,971.50 for the receipts. If we add $1,971.50 in receipts to the award of $1,626.40 for travel expenses, the appellant is entitled to a total of $3,597.90 in costs. We modify the addendum initial decision in this regard.

Conclusion

¶41 For the reasons described herein, we affirm the administrative judge's decision to award the appellant $7,182 in fees for Mr. Zweiback and $9,930 in fees for Ms. Gevondyan for a total award of $17,112. AID at 12-14. We modify the addendum initial decision to award the appellant $178,925 in fees for Mr. Walsh (421 hours at a rate of $425/hour) and $3,597.90 in costs.

---

[17] As noted above, the administrative judge determined that Mr. Walsh's work relating to the FOIA request was not recoverable, and we affirm that decision herein. AID at 15.

[18] Mr. Walsh concedes that it is not the agency's responsibility to pay for candy, and he agrees to remove this expense. PFR File, Tab 3 at 26.

**ORDER**

¶42     We ORDER the agency to pay the appellant attorney fees in the amount of $7,182 for Mr. Zweiback's work, $9,930 for Ms. Gevondyan's work, and $178,925 for Mr. Walsh's work, for a total of $196,037 in fees, and $3,597.90 in costs. The agency must complete this action no later than 20 days after the date of this decision. Title 5 of the United States Code, section 1204(a)(2) (5 U.S.C. § 1204(a)(2)).

¶43     We also ORDER the agency to tell the appellant and the attorney promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. We ORDER the appellant and the attorney to provide all necessary information that the agency requests to help it carry out the Board's Order. The appellant and the attorney, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶44     No later than 30 days after the agency tells the appellant or the attorney that it has fully carried out the Board's Order, the appellant or the attorney may file a petition for enforcement with the office that issued the initial decision on this appeal, if the appellant or the attorney believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant or the attorney believes the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. *See* 5 C.F.R. § 1201.182(a).

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

The addendum initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm.   Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's *Rules of Practice,* and *Forms* 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for   information   regarding   pro   bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services

provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD: _____/s/ for_____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.